Donald R. Warren (Bar No. 138933)
Phillip E. Benson (Bar No. 97420)
WARREN ▪ BENSON LAW GROUP
7825 Fay Avenue, Suite 200
La Jolla, CA 92037
Telephone: (858) 454-2877
Facsimile: (858) 454-5878

Attorneys for *Qui Tam* Plaintiff

FILED
CLERK, U.S. DISTRICT COURT
APR 13 2015
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Black out
L/N

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES of America *ex rel.* Mike Rapport,

Plaintiffs,

v.

PENGCHENG ALUMINUM ENTERPRISE, INC. USA; TRANSPORT ALUMINUM, INC.; ALUMINUM SHAPES L.L.C.; GLOBAL ALUMINUM (USA), INC,; and EVOLUTION ALUMINUM, INC.

Defendants.

CASE NO. ED CV15-712-GHK (DTBx)

COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT 31 U.S.C. §3729, et seq.

JURY DEMAND

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. §§ 3730(b)(2) and (3)]**

BY FAX

For the United States of America and for himself, *Qui Tam* Plaintiff Mike Rapport alleges as follows:

## I. NATURE OF ACTION

1. Mike Rapport, on behalf of the United States, brings this action to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729, et seq.

2. This action is based upon the defendants' knowing use of, or causing to be used, false records material to an obligation to pay, and knowingly and improperly concealing or avoiding their obligation to pay, more than $3 Billion of

PAID
APR 13
Clerk, US District Court
COURT 4612

countervailing duties owed to the United States for the importation of extruded aluminum from the People's Republic of China ("PRC"). The defendants did this by falsifying four hundred and fourteen Customs Form 7501 Entry Summary forms to make it appear that the imported extruded aluminum was not subject to any countervailing duties, and by falsely certifying that all countervailing duty fees had been disclosed on the Entry Summary form and that the duty fees entered on the Entry Summary form by the defendant importers were true and correct.

3. Pursuant to the Department of Commerce Countervailing Duty Order published in the Federal Register at 76 Fed. Reg. 30653 (May 26, 2011), the defendants were required to pay a countervailing duty of 374.15 percent on the more than $880 Million of extruded aluminum they imported from the PRC during the 36 month period of July 2011 through June 2014. This countervailing duty fee was owed to the United States at the time of importation. The "single" damages owed by the defendants to the United States is more than $3 Billion, and mandatory trebling of these "single" damages is required under the False Claims Act.

4. The defendants are stockpiling this aluminum in at least three locations: their 1.1 million square foot warehouse located at 10681 Production Ave. in Fontana, California, their warehouse located at 19605 E. Walnut Drive North, Walnut, California, and also at the facility of defendant Aluminum Shapes L.L.C. in Delair, New Jersey.

## II. JURISDICTION

5. The Court has subject matter jurisdiction to entertain this action under 28 U.S.C. §§ 1331 and 1345. The Court may exercise personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a).

## III. VENUE

6. Venue is proper in the Central District of California under 31 U.S.C. § 3732 and 28 U.S.C. §§ 1391(b) and (c) because the defendants transact business

in this District and because the defendants committed acts within this district that violated 31 U.S.C. § 3729.

## IV. PARTIES

7. ***Qui Tam* Plaintiff Mike Rapport**. Mr. Rapport owns and operates Frontier Aluminum Corporation, located in the Central District of California. Through his decades of experience in the aluminum extrusion business, Mr. Rapport has developed extensive knowledge of the aluminum market and has learned that during the 36 month period of July 2011 through June 2014, the defendants imported four hundred and fourteen shipments, totaling more than $880 Million of extruded aluminum from the PRC for which they owed a countervailing duty of 374.15 percent on the value of the aluminum, and that the defendants knowingly concealed this obligation and knowingly used false records via Customs Form 7501 Entry Summary forms to avoid payment of this countervailing duty obligation. Mr. Rapport has learned that the defendants are stockpiling this aluminum in at least two locations: their 1.1 million square foot warehouse located at 10681 Production Ave. in Fontana, California, their warehouse located at 19605 E. Walnut Drive North, Walnut, California, and also at the facility of defendant Aluminum Shapes L.L.C. in Delair, New Jersey.

8. **Defendant Pengcheng Aluminum Enterprise, Inc. USA, also known as Pengcheng Aluminum Enterprise, Inc.** Pengcheng Aluminum Enterprise, Inc. USA, also known as Pengcheng Aluminum Enterprise, Inc., ("Pengcheng") is a California corporation with its principal place of business located in the Central District of California. On information and belief, all five defendants in this action are owned and controlled by Mr. Liu Zhongtian and his immediate family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning Zhongwang Group ( collectively, "Zhongwang").

9. Pengcheng was incorporated in January, 2004. Between July 2011 and June 2014, Pengcheng purchased and imported into the ports of Los Angeles, CA, Long Beach, CA, and New York, NY, approximately $857,000,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Pengcheng knowingly used a false record for each of these imports, in the form of Customs Form 7501, which Pengcheng improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required countervailing duty and then falsified the accuracy of the Form 7501. Pengcheng has continued to knowingly and improperly avoid its obligation to pay this countervailing duty on these imports.

10. Pengcheng was merged into defendant Evolution Aluminum, Inc. on December 31, 2014.

11. **Defendant Transport Aluminum, Inc.** Transport Aluminum, Inc., ("Transport Aluminum") is a California corporation with its principal place of business located in the Central District of California. On information and belief, all five defendants in this action are owned and controlled by Mr. Liu Zhongtian and his immediate family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning Zhongwang Group ( collectively, "Zhongwang").

12. Transport Aluminum was incorporated in August, 2010. Between July 2012 and February 2013, Transport Aluminum purchased and imported into the ports of Los Angeles, CA, and Long Beach, CA , approximately $93,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Transport Aluminum knowingly used a false record for each of these imports, in the form of Customs Form 7501, which Transport Aluminum improperly made to appear that

the countervailing duty was not owed, in order to avoid paying the required countervailing duty and then falsified the accuracy of the Form 7501. Transport Aluminum has continued to knowingly and improperly avoid its obligation to pay this countervailing duty on these imports.

13. Transport Aluminum was merged into defendant Evolution Aluminum, Inc. on December 31, 2014.

14. **Defendant Aluminum Shapes L.L.C.** Aluminum Shapes L.L.C. ("Aluminum Shapes") is a New Jersey corporation with its principal place of business located in Delair, New Jersey. On information and belief, all five defendants in this action are owned and controlled by Mr. Liu Zhongtian and his family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning Zhongwang Group ( collectively, "Zhongwang").

15. Aluminum Shapes L.L.C. was incorporated in November, 2012, when defendant Global Aluminum (USA), Inc. purchased an existing aluminum business and incorporated it as Aluminum Shapes, L.L.C. Beginning four months later, in March 2013, and continuing through January 2014, Aluminum Shapes purchased and imported into the port of New York, approximately $26,000,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Aluminum Shapes knowingly used a false record for each of these imports, in the form of Customs Form 7501 which Aluminum Shapes improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required countervailing duty and then falsified the accuracy of the Form 7501. Aluminum Shapes has continued to knowingly and improperly avoid its obligation to pay this countervailing duty on these imports.

16. Aluminum Shapes is owned by defendant Global Aluminum (USA), Inc. Global Aluminum (USA), Inc. was merged into defendant Evolution Aluminum, Inc. on December 31, 2014.

17. **Defendant Global Aluminum (USA), Inc.** Global Aluminum (USA), Inc. ("Global Aluminum") is a California corporation with its principal place of business located in the Central District of California. On information and belief, all five defendants in this action are owned and controlled by Mr. Liu Zhongtian and his family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning Zhongwang Group ( collectively, "Zhongwang").

18. Global Aluminum was incorporated in 2009, and purchased an existing New Jersey aluminum business which it incorporated as Aluminum Shapes L.L.C. business in November 2012.

19. Global Aluminum was merged into defendant Evolution Aluminum, Inc. on December 31, 2014.

20. **Defendant Evolution Aluminum, Inc.** Evolution Aluminum, Inc. ("Evolution Aluminum") is a California corporation with its principal place of business located in the Central District of California. On information and belief, Evolution Aluminum is owned and controlled by Mr. Liu Zhongtian and his family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning Zhongwang Group ( collectively, "Zhongwang").

21. Evolution Aluminum was incorporated on December 23, 2014. On information and belief, Mr. Rapport alleges that at least ten of the Liu family's California corporations and the Liu family's New Jersey corporation were each merged into Evolution Aluminum on December 31, 2014. The companies that

were merged into Evolution Aluminum, Inc., with their dates of incorporation and recorded evidence of their Liu family connection, are:

| **Corporation** | **Incorporated** | **Liu family** |
|---|---|---|
| Aluminum Industrial, Inc. (a California corporation) | 2009 Nov. | Liu, Zuopeng (son) President |
| Aluminum Shapes L.L.C. (a New Jersey corporation) | 2012 Nov. | Liu, Zuopeng (son) President |
| Aluminum Source, Inc. (a California corporation) | 2009 Oct. | Liu, Zuopeng (son) President |
| American Apex Aluminum, Inc. (a California corporation) | 2009 June | Liu, Zuopeng (son) President |
| Century American Aluminum, Inc. (a California corporation) | 2009 Jan. | Liu, Zuopeng (son) President |
| Global Aluminum (USA), Inc. (a California corporation) | 2009 May | Liu, Zuopeng (son) President |
| Pengcheng Aluminum Enterprise, Inc. USA (a California corporation) | 2004 Jan. | Liu, Zuopeng (son) President |
| Transport Aluminum, Inc. (a California corporation) | 2010 Aug. | Liu, Zuopeng (son) President |
| 1001 Doubleday, L.L.C. (a California limited liability corporation) | 2008 Oct. | Wang, Zhijie (wife) President (California warehouse for defendants' aluminum) |
| 10681 Production Avenue, L.L.C. (a California limited liability corporation) | 2009 Sept. | Wang, Zhijie (wife) President (California warehouse for defendants' aluminum) |

22. Plaintiff is informed and believes, and thereon alleges, that Defendants, and each and all of them, at all relevant times hereinafter mentioned were the agents, joint venturers, parent companies, successor companies, and/or co-conspirators of each of the remaining defendants. Defendants, in doing the things herein alleged, were acting within the course and scope of such relationship and were responsible for the occurrences herein alleged.

23. <u>Rule 9(b), Fed. R. Civ. P. Allegations</u>. Much of the documentation necessary to prove the allegations contained herein is in the exclusive possession of the Defendants or the United States.

24. The allegations of fact contained in this Complaint are personally known to Mr. Rapport unless identified as being made on information and belief. Each allgation made on information and belief is based on Mr. Rapport's knowledge and experience and a reasoned factual basis for making the allegation, but for which he lacks complete details.

## V. THE FALSE CLAIMS ACT

25. The FCA provides, in pertinent part, that a person who:

> (a)(1)C) conspires to commit a violation of subparagraph (G); or
>
> (a)(1)(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains. . . .

31 U.S.C. § 3729 For purposes of the False Claims Act,

> the term "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of

the information; and require no proof of specific intent to defraud.

31 U.S.C. § 3729(b).

## VI. CHINA'S COUNTERVAILING SUBSIDIZATION OF ITS ALUMINUM INDUSTRY AND THE DEFENDANTS' VIOLATIONS OF THE FALSE CLAIMS ACT

26. The People's Republic of China ("PRC") has been significantly subsidizing its aluminum extrusion industry, making it advantageous for PRC's aluminum exporters to deliver extruded aluminum into the United States at below their actual cost of production, thereby undercutting and damaging the United States aluminum extrusion industry. As a result, there has been a great incentive for PRC aluminum exporters to bring as much subsidized aluminum extrusion as possible into the United States.

27. In March 2010, the U.S. domestic producers of aluminum extrusions filed a petition with the International Trade Commission ("ITC") for an investigation into whether PRC aluminum extruders were receiving countervailing government subsidies and whether the resulting aluminum extrusions from these PRC extruders were being "dumped" into the United States and harming the United States aluminum extrusion industry.

28. After the investigation and preliminary findings by the ITC and the Department of Commerce, Commerce issued preliminary anti-dumping and countervailing duty determination orders effective September 7, 2010 for countervailing duties, 75 Fed. Reg. 54,302 (Sept. 7, 2010), and November 12, 2010 for antidumping duties, 75 Fed. Reg. 69,403 (Nov. 12, 2010). These preliminary dumping and countervailing duty orders anticipated final orders would be in place in early 2011, and put the world on notice that substantial dumping duties and countervailing duties would likely soon be imposed on PRC extruded aluminum imported into the United States.

29. In the 2010 anti-dumping action, the United States named three PRC companies as mandatory respondents. One of those companies was Zhongwang, which was founded by Mr. Liu Zhongtian, one of the wealthiest people in PRC and the world.

30. As more fully set forth below, *Qui Tam* Plaintiff Mike Rapport alleges Mr. Liu Zhongtian had a long history of using several of his California corporations, including Pengcheng Aluminum, to import PRC subsidized aluminum extrusions from Zhongwang into the United States.

31. On information and belief, Qui Tam Plaintiff Mike Rapport alleges that in an effort to record increasing revenue to Zhongwang as Zhongwang was going into an Initial Public Offering on the Hong Kong stock exchange, Mr. Liu Zhongtian created Aluminum Industrial, Inc., Aluminum Source, Inc., American Apex Aluminum, Inc., Century American Aluminum, Inc., and Global Aluminum (USA), Inc. as new California corporations in 2009, and Transport Aluminum, Inc. in 2010, to join with Pengcheng Aluminum in purchasing extruded aluminum bars from Zhongwang and importing these subsidized aluminum extrusions into the United States. In the next eighteen month period from March 2009 through September 3, 2010, these six California corporations then imported more than $1.25 billion worth of Zhongwang's subsidized extruded aluminum bars into the United States. The importation of this Zhongwang extruded aluminum by Mr. Liu's six California aluminum corporations stopped on September 3, 2010 as a result of the United States' anti- dumping investigation and the September 7, 2010 Department of Commerce Preliminary Affirmative Countervailing Duty Determination.

32. However, four months later, beginning on January 2, 2011, Pengcheng Aluminum began importing additional Zhongwang extruded aluminum bars - - although these new extrusions had now been shaped and tack welded together to look like aluminum pallets instead of obvious aluminum bars, as

discussed later herein.

33. The September 7, 2010 Preliminary Affirmative Countervailing Duty Determination which caused the defendants to stop importing obviously solid extruded aluminum bars, concluded that Zhongwang was an uncooperative mandatory respondent in the Countervailing Duty action and preliminarily found Zhongwang had received 137.65 percent net countervailing subsidy from the People's Republic of China for its extruded aluminum. The Department of Commerce instructed U.S. Customs and Border Protection to suspend liquidation of all entries of Zhongwang's subject aluminum extrusions entered or withdrawn from warehouse, for consumption, on or after September 7, 2010. The preliminary determination and order was designated to apply to Zhongwang's aluminum produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents).

34. Extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 1 (also known as 1000 series) contain not less than 99 percent aluminum by weight. Extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 3 (also known as 3000 series) contain manganese as the major alloying element, with manganese accounting for not more than 3.0 percent of total materials by weight. Extrusions made from an aluminum alloy with an Aluminum Association series designation commencing with the number 6 (also known as 6000 series) contain magnesium and silicon as the major alloying elements, with magnesium accounting for at least 0.1 percent but not more than 2.0 percent of total materials by weight, and silicon accounting for at least 0.1 percent but not more than 3.0 percent of total materials by weight.

35. The extruded aluminum bars that had been imported into the United States from Zhongwang until September 3, 2010 were Series 1 (also known as 1000 series), and it was obvious from the September 7, 2010 preliminary determination and order that substantial countervailing duties would soon be imposed on these extrusions. The aluminum extrusions that Pengcheng Aluminum thereafter began importing from Zhongwang four months later in January 2011,

which were shaped and tack welded to look like pallets, were also Series 1 (1000 series) extrusions that had simply been made to look like pallets.

36. On May 26, 2011, the Department of Commerce issued its Countervailing Duty Order, published at 76 Fed. Reg. 30653. The Department of Commerce ordered that a countervailing duty of 374.15 percent *ad valorem* (based on value) applied to all Zhongwang aluminum extrusions meeting the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents), as more fully described in paragraphs 29 and 30 above. The 374.15 percent Countervailing Duty Order was effective May 26, 2011.

## VII. <u>DEFENDANTS' SCHEME TO AVOID PAYMENT OF COUNTERVAILING DUTIES</u>

37. Importers availing themselves of access to the U.S. commercial market must pay the United States duties on goods they import into the United States. 19 U.S.C. § 1505; 19 C.F.R. § 141.1(b).

38. Such duties are owed to Customs on importation. 19 C.F.R. § 141.1(a).

39. Upon importation, an importer of record or a customs broker acting as the importer's agent submits to Customs a Customs Form 7501, also known as an "Entry Summary." The Entry Summary requires the importer to identify the country of origin of the imported goods; the harmonized tariff number which classifies the goods for Customs purposes; the total entered value, which is usually the price paid by the importer to the seller for the goods; the normal harmonized tariff schedule duty rate and duty amount; and any Anti-Dumping or Countervailing Duty rate and duty amount.

40. The importer of record must be the owner or purchaser of the merchandise or a customs broker that is appropriately designated by the owner, purchaser, or consignee of the merchandise. 19 U.S.C. § 1484(a)(2)(B).

41. The Commercial Invoice must identify the seller and the buyer, and describe the particular goods being imported, including their quantity, country of origin, and price. 19 CFR § 141.86.

42. **<u>Customs Form 7501 Entry Summary and Certification</u>**. As discussed above, when an importer imports goods into the United States, the importer is required to complete a Customs Form 7501 Entry Summary. The Entry Summary is filed with U.S. Customs and Border Protection at the time of import and is used by Customs and Border Protection to collect all duty fees prior to liquidating/releasing the imported goods, including regular Harmonized Tariff Schedule Duty, Anti-Dumping Duty and Countervailing Duty owed for the importation.

43. In Box 33 of the Entry Summary, the importer is required to identify any Countervailing Duty rate assigned by the Department of Commerce to the imported goods. In Box 34, the importer is required to state the total duty and tax owed for the imported goods, including any Countervailing Duty fees.

44. At the bottom of the first page of the Entry Summary, the importer is required to sign a certification that states, in pertinent part:

> I declare that I am the Importer of record and that the actual owner, purchaser, or consignee for CBP purposes is as shown above, **OR** owner or purchaser or agent thereof.
>
> I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed.
>
> I will immediately furnish to the appropriate CBP officer any information showing a different statement of facts.

45. However, for each of the defendants' four hundred and fourteen importations of the Series 1 extruded aluminum imported between July 2011 and June 2014, each respective defendant importer falsified the Customs Form 7501 Entry Summary by failing to disclose the countervailing duty fees owed for these imports, and by falsely certifying that it had fully disclosed any countervailing duty fees owed for the imports and that the duty fees entered by the importer on

the Customs Form 7501 Entry Summary were true and correct.

46. **<u>Pencheng's violations of the False Claims Act</u>**. In the next few years following the May 26, 2011 Countervailing Duty Order (specifically, July 2011 through June 2014), defendant Pengcheng purchased and imported into the ports of Los Angeles, CA, Long Beach, CA, and New York, NY, approximately $857,000,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Pengcheng knowingly used a false record for each of these imports, in the form of Customs Form 7501, which Pengcheng improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required countervailing duty fees, and falsely certified that it had fully disclosed any countervailing duty fees owed for the imports and that the duty fees the importer entered on the Customs Form 7501 Entry Summary were true and correct. Pengcheng knowingly and improperly avoided its obligation to pay these countervailing duties on these imports and has continued to knowingly and improperly avoid its obligation to pay these countervailing duties on these imports.

47. Pengcheng carried out this scheme with 390 separate and false Customs Entry Summary Forms 7501.

48. **<u>Transport Aluminum's violations of the False Claims Act</u>**. In the next few years following the May 26, 2011 Countervailing Duty Order (specifically, July 2012 through February 2013), defendant Transport Aluminum purchased and imported into the ports of Los Angeles, CA, and Long Beach, CA, approximately $93,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Transport Aluminum knowingly used a false record for each of these imports, in the form of Customs Form 7501, which Transport Aluminum improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required countervailing duty fees, and falsely certified that it had fully disclosed any countervailing duty fees owed for the imports and that the duty fees the importer entered on the Customs Form 7501 Entry Summary were true and correct. Transport Aluminum knowingly and improperly avoided its obligation to pay these countervailing duties on these imports and has continued to

knowingly and improperly avoid its obligation to pay these countervailing duties on these imports.

49. Transport Aluminum carried out this scheme with 3 separate and false Customs Entry Summary Forms 7501.

50. **<u>Aluminum Shapes' violations of the False Claims Act</u>**. In the next few years following the May 26, 2011 Countervailing Duty Order (specifically, March 2013 through January 2014), defendant Aluminum Shapes purchased and imported into the ports of New York approximately $26,000,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Aluminum Shapes knowingly used a false record for each of these imports, in the form of Customs Form 7501, which Aluminum Shapes improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required countervailing duty fees, and falsely certified that it had fully disclosed any countervailing duty fees owed for the imports and that the duty fees the importer entered on the Customs Form 7501 Entry Summary were true and correct. Aluminum Shapes knowingly and improperly avoided its obligation to pay these countervailing duties on these imports and has continued to knowingly and improperly avoid its obligation to pay these countervailing duties on these imports.

51. Aluminum Shapes carried out this scheme with 21 separate and false Customs Entry Summary Forms 7501.

52. **<u>In reality, the aluminum pallets are not aluminum pallets at all</u>**. These imports are solid aluminum extrusions shaped and tack welded together to look like a pallet. In reality, these pallets are made with Series 1000 nonstructural aluminum extrusions to be eventually used as basic feed stock to make aluminum billet. To do so, this 1000 series alloy (which is not less than 99% pure aluminum) feed stock is to be later melted and combined with magnesium, silicon, copper, zinc or other elements, to produce 6000 series aluminum billet which is usable in producing structurally sound aluminum extrusions and possibly other end products.

53. The "pallets" themselves would not survive any real usage as a pallet due to the lack of proper welding during assembly as well as being too soft

because they are almost pure aluminum and lacking a structural 6061 or 6905 alloy.

54. Real pallets made of the 6061 or 6905 alloys would not be able to be converted into the most common alloy for extrusions; 6063 alloy. By using a 1000 series alloy, Zhongwang's imported pallet feedstock can be converted into almost any alloy one would want to make. Hence, these are faux pallets whose destiny is a remelt furnace only.

55. The defendants are stockpiling this aluminum in at least three locations: their 1.1 million square foot warehouse in Fontana, California, their warehouse located at 19605 E. Walnut Drive North, Walnut, California, and also at the Aluminum Shapes facility in Delair, New Jersey. However much of the faux "pallets" in California have been trucked to the Aluminum Shapes facility in Delair, NJ, where they are being used as standard feed stock melted down to be alloyed into usable aluminum billet.

## VIII. CLAIM FOR VIOLATION OF THE FALSE CLAIMS ACT

56. Plaintiff repeats and realleges §§ 1 through 55 as if fully set forth herein.

57. In violation of 31 U.S.C. § 3729 (a)(1)C) and (G), and as described above, the defendants conspired and knowingly made or used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government, as described above.

58. The above described conduct of the defendants has caused damage to the United States of more than $3 Billion.

WHEREFORE, FOR THE United States and himself, *Qui Tam* Plaintiff Mike Rapport demands and prays that judgment be entered against the defendants and in *Qui Tam* Plaintiff's favor and in favor of the United States as follows:

1. For the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such further

relief as may be just and proper.

2. For the maximum *qui tam* share of the amount recovered for the United States permitted pursuant to 31 U.S.C. § 3730(d).

3. For attorney's fees together with all reasonable costs and expenses in prosecuting this matter and pursuant to 31 U.S.C. §§ 3730(d).

4. For all such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury.

Dated: April 12, 2015

Respectfully submitted,

Donald R. Warren (Bar No. 138933)
Phillip E. Benson (Bar No. 97420)
Warren - Benson Law Group
7825 Fay Avenue, Suite 200
La Jolla, CA 92037
Telephone: (858) 454-2877
Facsimile: (858) 454-5878

Attorneys for *Qui Tam* Plaintiff
Mike Rapport

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself [ ] )

United States and Mike Rapport

**DEFENDANTS** ( Check box if you are representing yourself [ ] )

Pengcheng Aluminum Enterprise, Inc. USA; Transport Aluminum, Inc. ; Aluminum Shapes L.L.C.; Global Aluminum (USA), Inc.; and Evolution Aluminum, Inc.

(b) County of Residence of First Listed Plaintiff ____________

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant San Bernardino

*(IN U.S. PLAINTIFF CASES ONLY)*

(c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

Warren - Benson Law Group. 7825 Fay Ave., Ste. 200, La Jolla, CA 92037
Ph: 858.454.2877

Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- [X] 1. U.S. Government Plaintiff
- [ ] 3. Federal Question (U.S. Government Not a Party)
- [ ] 2. U.S. Government Defendant
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

- [X] 1. Original Proceeding
- [ ] 2. Removed from State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Reinstated or Reopened
- [ ] 5. Transferred from Another District (Specify)
- [ ] 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [X] Yes [ ] No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [X] No [ ] **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

31 U.S.C., et seq. Violations of the False Claims Act

**VII. NATURE OF SUIT** (Place an X in one box only).

**OTHER STATUTES**
- [X] 375 False Claims Act
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/Etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced & Corrupt Org.
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Info. Act
- [ ] 896 Arbitration
- [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.)
- [ ] 153 Recovery of Overpayment of Vet. Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment

**REAL PROPERTY CONT.**
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Fed. Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury-Med Malpratice
- [ ] 365 Personal Injury-Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**TORTS**
**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/Accommodations
- [ ] 445 American with Disabilities-Employment
- [ ] 446 American with Disabilities-Other
- [ ] 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus/Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Ret. Inc. Security Act

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405 (g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405 (g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

BY FAX

**FOR OFFICE USE ONLY:** Case Number:



CV15-712

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no, " skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| | | |
|---|---|---|
| **QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?** ☒ Yes ☐ No | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☒ NO. Continue to Question B.2. |
| If "no, " skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → | ☒ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |
| **QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?** ☐ Yes ☒ No | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question C.2. |
| If "no, " skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| **QUESTION D: Location of plaintiffs and defendants?** | **A.** Orange County | **B.** Riverside or San Bernardino County | **C.** Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☒ | ☐ |

| **D.1. Is there at least one answer in Column A?** | **D.2. Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes ☒ No | ☒ Yes ☐ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. → | If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ↓ |

| **QUESTION E: Initial Division?** | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: → | EASTERN |

**QUESTION F: Northern Counties?**

Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? ☐ Yes ☒ No

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**? ☒ NO ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**? ☐ NO ☒ YES

If yes, list case number(s): EDCV 14-1833 VAP(SPx)

**Civil cases** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** Donald R. Warren DATE: April 12, 2015

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |