ORIGINAL

Donald R. Warren (Bar No. 138933)
Phillip E. Benson (Bar No. 97420)
WARREN ▪ BENSON LAW GROUP
7825 Fay Avenue, Suite 200
La Jolla, CA 92037
Telephone: (858) 454-2877
Facsimile: (858) 454-5878

Attorneys for *Qui Tam* Plaintiff

FILED
CLERK, U.S. DISTRICT COURT
APR 15 2015
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES of America *ex rel.* Mike Rapport,

Plaintiffs,

v.

PENGCHENG ALUMINUM ENTERPRISE, INC. USA; TRANSPORT ALUMINUM, INC.; ALUMINUM SHAPES L.L.C.; GLOBAL ALUMINUM (USA), INC,; EVOLUTION ALUMINUM, INC.; and PERFECTUS ALUMINUM ACQUISITIONS, LLC

Defendants.

CASE NO. EDCV 15-712 GHK (DTBx)

AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT 31 U.S.C. §3729, et seq.

JURY DEMAND

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. §§ 3730(b)(2) and (3)]**

For the United States of America and for himself, *Qui Tam* Plaintiff Mike Rapport alleges as follows:

## I. NATURE OF ACTION

1. Mike Rapport, on behalf of the United States, brings this action to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729, et seq.

2. This action is based upon the defendants' knowing use of, or causing to be used, false records material to an obligation to pay, and knowingly and improperly concealing or avoiding their obligation to pay, more than $3 Billion of

ORIGINAL

Donald R. Warren (Bar No. 138933)
Phillip E. Benson (Bar No. 97420)
WARREN ▪ BENSON LAW GROUP
7825 Fay Avenue, Suite 200
La Jolla, CA 92037
Telephone: (858) 454-2877
Facsimile: (858) 454-5878

Attorneys for *Qui Tam* Plaintiff

FILED
CLERK, U.S. DISTRICT COURT
APR 15 2015
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES of America *ex rel.* Mike Rapport,<br><br>Plaintiffs,<br><br>v.<br><br>PENGCHENG ALUMINUM ENTERPRISE, INC. USA; TRANSPORT ALUMINUM, INC.; ALUMINUM SHAPES L.L.C.; GLOBAL ALUMINUM (USA), INC,; EVOLUTION ALUMINUM, INC.; and PERFECTUS ALUMINUM ACQUISITIONS, LLC<br><br>Defendants. | CASE NO. EDCV 15-712 GHK (DTBx)<br><br>AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT 31 U.S.C. §3729, et seq.<br><br>JURY DEMAND<br><br>**FILED UNDER SEAL PURSUANT TO 31 U.S.C. §§ 3730(b)(2) and (3)]** |

For the United States of America and for himself, *Qui Tam* Plaintiff Mike Rapport alleges as follows:

## I. NATURE OF ACTION

1. Mike Rapport, on behalf of the United States, brings this action to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729, et seq.

2. This action is based upon the defendants' knowing use of, or causing to be used, false records material to an obligation to pay, and knowingly and improperly concealing or avoiding their obligation to pay, more than $3 Billion of

countervailing duties owed to the United States for the importation of extruded aluminum from the People's Republic of China ("PRC"). The defendants did this by falsifying four hundred and fourteen Customs Form 7501 Entry Summary forms to make it appear that the imported extruded aluminum was not subject to any countervailing duties, and by falsely certifying that all countervailing duty fees had been disclosed on the Entry Summary form and that the duty fees entered on the Entry Summary form by the defendant importers were true and correct.

3. Pursuant to the Department of Commerce Countervailing Duty Order published in the Federal Register at 76 Fed. Reg. 30653 (May 26, 2011), the defendants were required to pay a countervailing duty of 374.15 percent on the more than $880 Million of extruded aluminum they imported from the PRC during the 36 month period of July 2011 through June 2014. This countervailing duty fee was owed to the United States at the time of importation. The "single" damages owed by the defendants to the United States is more than $3 Billion, and mandatory trebling of these "single" damages is required under the False Claims Act.

4. The defendants are stockpiling this aluminum in at least three locations: their 1.1 million square foot warehouse located at 10681 Production Ave. in Fontana, California, their warehouse located at 19605 E. Walnut Drive North, Walnut, California, and also at the facility of defendant Aluminum Shapes L.L.C. in Delair, New Jersey.

## II. JURISDICTION

5. The Court has subject matter jurisdiction to entertain this action under 28 U.S.C. §§ 1331 and 1345. The Court may exercise personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a).

## III. VENUE

6. Venue is proper in the Central District of California under 31 U.S.C.

§ 3732 and 28 U.S.C. §§ 1391(b) and (c) because the defendants transact business in this District and because the defendants committed acts within this district that violated 31 U.S.C. § 3729.

## IV. PARTIES

7. ***Qui Tam* Plaintiff Mike Rapport**. Mr. Rapport owns and operates Frontier Aluminum Corporation, located in the Central District of California. Through his decades of experience in the aluminum extrusion business, Mr. Rapport has developed extensive knowledge of the aluminum market and has learned that during the 36 month period of July 2011 through June 2014, the defendants imported four hundred and fourteen shipments, totaling more than $880 Million of extruded aluminum from the PRC for which they owed a countervailing duty of 374.15 percent on the value of the aluminum, and that the defendants knowingly concealed this obligation and knowingly used false records via Customs Form 7501 Entry Summary forms to avoid payment of this countervailing duty obligation. Mr. Rapport has learned that the defendants are stockpiling this aluminum in at least two locations: their 1.1 million square foot warehouse located at 10681 Production Ave. in Fontana, California, their warehouse located at 19605 E. Walnut Drive North, Walnut, California, and also at the facility of defendant Aluminum Shapes L.L.C. in Delair, New Jersey.

8. **Defendant Pengcheng Aluminum Enterprise, Inc. USA, also known as Pengcheng Aluminum Enterprise, Inc.** Pengcheng Aluminum Enterprise, Inc. USA, also known as Pengcheng Aluminum Enterprise, Inc., ("Pengcheng") is a California corporation with its principal place of business located in the Central District of California. On information and belief, all five defendants in this action are owned and controlled by Mr. Liu Zhongtian and his immediate family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning

Zhongwang Group ( collectively, "Zhongwang").

9. Pengcheng was incorporated in January, 2004. Between July 2011 and June 2014, Pengcheng purchased and imported into the ports of Los Angeles, CA, Long Beach, CA, and New York, NY, approximately $857,000,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Pengcheng knowingly used a false record for each of these imports, in the form of Customs Form 7501, which Pengcheng improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required countervailing duty and then falsified the accuracy of the Form 7501. Pengcheng has continued to knowingly and improperly avoid its obligation to pay this countervailing duty on these imports.

10. On information and belief, Mr. Rapport alleges Pengcheng was merged into either defendant Evolution Aluminum, Inc. or defendant Perfectus Aluminum Acquisitions, LLC on December 31, 2014.

11. **<u>Defendant Transport Aluminum, Inc.</u>** Transport Aluminum, Inc., ("Transport Aluminum") is a California corporation with its principal place of business located in the Central District of California. On information and belief, all five defendants in this action are owned and controlled by Mr. Liu Zhongtian and his immediate family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning Zhongwang Group ( collectively, "Zhongwang").

12. Transport Aluminum was incorporated in August, 2010. Between July 2012 and February 2013, Transport Aluminum purchased and imported into the ports of Los Angeles, CA, and Long Beach, CA , approximately $93,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Transport

Aluminum knowingly used a false record for each of these imports, in the form of Customs Form 7501, which Transport Aluminum improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required countervailing duty and then falsified the accuracy of the Form 7501. Transport Aluminum has continued to knowingly and improperly avoid its obligation to pay this countervailing duty on these imports.

13. On information and belief, Mr. Rapport alleges Transport Aluminum was merged into either defendant Evolution Aluminum, Inc. or defendant Perfectus Aluminum Acquisitions, LLC on December 31, 2014.

14. **Defendant Aluminum Shapes L.L.C.** Aluminum Shapes L.L.C. ("Aluminum Shapes") is a New Jersey corporation with its principal place of business located in Delair, New Jersey. On information and belief, all five defendants in this action are owned and controlled by Mr. Liu Zhongtian and his family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning Zhongwang Group ( collectively, "Zhongwang").

15. Aluminum Shapes L.L.C. was incorporated in November, 2012, when defendant Global Aluminum (USA), Inc. purchased an existing aluminum business and incorporated it as Aluminum Shapes, L.L.C. Beginning four months later, in March 2013, and continuing through January 2014, Aluminum Shapes purchased and imported into the port of New York, approximately $26,000,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Aluminum Shapes knowingly used a false record for each of these imports, in the form of Customs Form 7501 which Aluminum Shapes improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required

countervailing duty and then falsified the accuracy of the Form 7501. Aluminum Shapes has continued to knowingly and improperly avoid its obligation to pay this countervailing duty on these imports.

16. Aluminum Shapes is owned by defendant Global Aluminum (USA), Inc. On information and belief, Mr. Rapport alleges Global Aluminum (USA), Inc. was merged into either defendant Evolution Aluminum, Inc. or defendant Perfectus Aluminum Acquisitions, LLC on December 31, 2014.

17. **Defendant Global Aluminum (USA), Inc.** Global Aluminum (USA), Inc. ("Global Aluminum") is a California corporation with its principal place of business located in the Central District of California. On information and belief, all five defendants in this action are owned and controlled by Mr. Liu Zhongtian and his family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning Zhongwang Group ( collectively, "Zhongwang").

18. Global Aluminum was incorporated in 2009, and purchased an existing New Jersey aluminum business which it incorporated as Aluminum Shapes L.L.C. business in November 2012.

19. On information and belief, Mr. Rapport alleges Global Aluminum (USA), Inc. was merged into either defendant Evolution Aluminum, Inc. or defendant Perfectus Aluminum Acquisitions, LLC on December 31, 2014.

20. **Defendant Evolution Aluminum, Inc.** Evolution Aluminum, Inc. ("Evolution Aluminum") is a California corporation with its principal place of business located in the Central District of California. On information and belief, Evolution Aluminum is owned and controlled by Mr. Liu Zhongtian and his family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which

includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning Zhongwang Group ( collectively, "Zhongwang").

21. Evolution Aluminum was incorporated on December 23, 2014, and is a California corporation with its principal place of business located in the Central District of California.

22. **<u>Defendant Perfectus Aluminum Acquisitions, LLC.</u>** Perfectus Aluminum Acquisitions, LLC ("Perfectus Aluminum Acquisitions") is a Delaware corporation with its principal place of business located in the Central District of California. On information and belief, Perfectus Aluminum Acquisitions is owned and controlled by Mr. Liu Zhongtian and his family members. Mr. Liu Zhongtian is the founder of one of the largest companies in PRC's aluminum industry: China Zhongwang Holdings Limited, which includes Liaoyang Zhongwang Aluminum Profile Co. Ltd. and Liaoning Zhongwang Group ( collectively, "Zhongwang").

23. Perfectus Aluminum Acquisitions was incorporated on December 10, 2014, and the Delaware Secretary of State records show that on December 29, 2014, Perfectus Aluminum Acquisitions, LLC filed a document indicating it is the surviving entity of merged corporations, with the merger effective December 31, 2014.

24. On information and belief, Mr. Rapport alleges that at least ten of the Liu family's California corporations and the Liu family's New Jersey corporation were each merged into either Evolution Aluminum or Perfectus Aluminum Acquisitions, LLC on December 31, 2014. The companies that were merged intoeither Evolution Aluminum, Inc. or Perfectus Aluminum Acquisitions, LLC, with their dates of incorporation and recorded evidence of their Liu family connection, are:

| Corporation | Incorporated | Liu family |
| --- | --- | --- |
| Aluminum Industrial, Inc. (a California corporation) | 2009 Nov. | Liu, Zuopeng (son) President |
| Aluminum Shapes L.L.C. (a New Jersey corporation) | 2012 Nov. | Liu, Zuopeng (son) President |
| Aluminum Source, Inc. (a California corporation) | 2009 Oct. | Liu, Zuopeng (son) President |
| American Apex Aluminum, Inc. (a California corporation) | 2009 June | Liu, Zuopeng (son) President |
| Century American Aluminum, Inc. (a California corporation) | 2009 Jan. | Liu, Zuopeng (son) President |
| Global Aluminum (USA), Inc. (a California corporation) | 2009 May | Liu, Zuopeng (son) President |
| Pengcheng Aluminum Enterprise, Inc. USA (a California corporation) | 2004 Jan. | Liu, Zuopeng (son) President |
| Transport Aluminum, Inc. (a California corporation) | 2010 Aug. | Liu, Zuopeng (son) President |
| 1001 Doubleday, L.L.C. (a California limited liability corporation) | 2008 Oct. | Wang, Zhijie (wife) President (California warehouse for defendants' aluminum) |
| 10681 Production Avenue, L.L.C. (a California limited liability corporation) | 2009 Sept. | Wang, Zhijie (wife) President (California warehouse for defendants' aluminum) |

25. Plaintiff is informed and believes, and thereon alleges, that

Defendants, and each and all of them, at all relevant times hereinafter mentioned were the agents, joint venturers, parent companies, successor companies, and/or co-conspirators of each of the remaining defendants. Defendants, in doing the things herein alleged, were acting within the course and scope of such relationship and were responsible for the occurrences herein alleged.

26. Rule 9(b), Fed. R. Civ. P. Allegations. Much of the documentation necessary to prove the allegations contained herein is in the exclusive possession of the Defendants or the United States.

27. The allegations of fact contained in this Complaint are personally known to Mr. Rapport unless identified as being made on information and belief. Each allgation made on information and belief is based on Mr. Rapport's knowledge and experience and a reasoned factual basis for making the allegation, but for which he lacks complete details.

## V. THE FALSE CLAIMS ACT

28. The FCA provides, in pertinent part, that a person who:

> (a)(1)C) conspires to commit a violation of subparagraph (G); or
>
> (a)(1)(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains. . . .

31 U.S.C. § 3729 For purposes of the False Claims Act,

> the term "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information; and require no proof of specific intent to defraud.

31 U.S.C. § 3729(b).

## VI. CHINA'S COUNTERVAILING SUBSIDIZATION OF ITS ALUMINUM INDUSTRY AND THE DEFENDANTS' VIOLATIONS OF THE FALSE CLAIMS ACT

29. The People's Republic of China ("PRC") has been significantly subsidizing its aluminum extrusion industry, making it advantageous for PRC's aluminum exporters to deliver extruded aluminum into the United States at below their actual cost of production, thereby undercutting and damaging the United States aluminum extrusion industry. As a result, there has been a great incentive for PRC aluminum exporters to bring as much subsidized aluminum extrusion as possible into the United States.

30. In March 2010, the U.S. domestic producers of aluminum extrusions filed a petition with the International Trade Commission ("ITC") for an investigation into whether PRC aluminum extruders were receiving countervailing government subsidies and whether the resulting aluminum extrusions from these PRC extruders were being "dumped" into the United States and harming the United States aluminum extrusion industry.

31. After the investigation and preliminary findings by the ITC and the Department of Commerce, Commerce issued preliminary anti-dumping and countervailing duty determination orders effective September 7, 2010 for countervailing duties, 75 Fed. Reg. 54,302 (Sept. 7, 2010), and November 12, 2010 for antidumping duties, 75 Fed. Reg. 69,403 (Nov. 12, 2010). These preliminary dumping and countervailing duty orders anticipated final orders would be in place in early 2011, and put the world on notice that substantial dumping duties and countervailing duties would likely soon be imposed on PRC extruded aluminum imported into the United States.

32. In the 2010 anti-dumping action, the United States named three PRC

companies as mandatory respondents. One of those companies was Zhongwang, which was founded by Mr. Liu Zhongtian, one of the wealthiest people in PRC and the world.

33. As more fully set forth below, *Qui Tam* Plaintiff Mike Rapport alleges Mr. Liu Zhongtian had a long history of using several of his California corporations, including Pengcheng Aluminum, to import PRC subsidized aluminum extrusions from Zhongwang into the United States.

34. On information and belief, Qui Tam Plaintiff Mike Rapport alleges that in an effort to record increasing revenue to Zhongwang as Zhongwang was going into an Initial Public Offering on the Hong Kong stock exchange, Mr. Liu Zhongtian created Aluminum Industrial, Inc., Aluminum Source, Inc., American Apex Aluminum, Inc., Century American Aluminum, Inc., and Global Aluminum (USA), Inc. as new California corporations in 2009, and Transport Aluminum, Inc. in 2010, to join with Pengcheng Aluminum in purchasing extruded aluminum bars from Zhongwang and importing these subsidized aluminum extrusions into the United States. In the next eighteen month period from March 2009 through September 3, 2010, these six California corporations then imported more than $1.25 billion worth of Zhongwang's subsidized extruded aluminum bars into the United States. The importation of this Zhongwang extruded aluminum by Mr. Liu's six California aluminum corporations stopped on September 3, 2010 as a result of the United States' anti- dumping investigation and the September 7, 2010 Department of Commerce Preliminary Affirmative Countervailing Duty Determination.

35. However, four months later, beginning on January 2, 2011, Pengcheng Aluminum began importing additional Zhongwang extruded aluminum bars - - although these new extrusions had now been shaped and tack welded together to look like aluminum pallets instead of obvious aluminum bars, as discussed later herein.

36. The September 7, 2010 Preliminary Affirmative Countervailing Duty Determination which caused the defendants to stop importing obviously solid extruded aluminum bars, concluded that Zhongwang was an uncooperative mandatory respondent in the Countervailing Duty action and preliminarily found Zhongwang had received 137.65 percent net countervailing subsidy from the People's Republic of China for its extruded aluminum. The Department of Commerce instructed U.S. Customs and Border Protection to suspend liquidation of all entries of Zhongwang's subject aluminum extrusions entered or withdrawn from warehouse, for consumption, on or after September 7, 2010. The preliminary determination and order was designated to apply to Zhongwang's aluminum produced by an extrusion process, made from aluminum alloys having metallic elements corresponding to the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents).

37. Extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 1 (also known as 1000 series) contain not less than 99 percent aluminum by weight. Extrusions made from aluminum alloy with an Aluminum Association series designation commencing with the number 3 (also known as 3000 series) contain manganese as the major alloying element, with manganese accounting for not more than 3.0 percent of total materials by weight. Extrusions made from an aluminum alloy with an Aluminum Association series designation commencing with the number 6 (also known as 6000 series) contain magnesium and silicon as the major alloying elements, with magnesium accounting for at least 0.1 percent but not more than 2.0 percent of total materials by weight, and silicon accounting for at least 0.1 percent but not more than 3.0 percent of total materials by weight.

38. The extruded aluminum bars that had been imported into the United States from Zhongwang until September 3, 2010 were Series 1 (also known as 1000 series), and it was obvious from the September 7, 2010 preliminary determination and order that substantial countervailing duties would soon be imposed on these extrusions. The aluminum extrusions that Pengcheng Aluminum thereafter began importing from Zhongwang four months later in January 2011, which were shaped and tack welded to look like pallets, were also Series 1 (1000

series) extrusions that had simply been made to look like pallets.

39. On May 26, 2011, the Department of Commerce issued its Countervailing Duty Order, published at 76 Fed. Reg. 30653. The Department of Commerce ordered that a countervailing duty of 374.15 percent *ad valorem* (based on value) applied to all Zhongwang aluminum extrusions meeting the alloy series designations published by The Aluminum Association commencing with the numbers 1, 3, and 6 (or proprietary equivalents or other certifying body equivalents), as more fully described in paragraphs 29 and 30 above. The 374.15 percent Countervailing Duty Order was effective May 26, 2011.

## VII. DEFENDANTS' SCHEME TO AVOID PAYMENT OF COUNTERVAILING DUTIES

40. Importers availing themselves of access to the U.S. commercial market must pay the United States duties on goods they import into the United States. 19 U.S.C. § 1505; 19 C.F.R. § 141.1(b).

41. Such duties are owed to Customs on importation. 19 C.F.R. § 141.1(a).

42. Upon importation, an importer of record or a customs broker acting as the importer's agent submits to Customs a Customs Form 7501, also known as an "Entry Summary." The Entry Summary requires the importer to identify the country of origin of the imported goods; the harmonized tariff number which classifies the goods for Customs purposes; the total entered value, which is usually the price paid by the importer to the seller for the goods; the normal harmonized tariff schedule duty rate and duty amount; and any Anti-Dumping or Countervailing Duty rate and duty amount.

43. The importer of record must be the owner or purchaser of the merchandise or a customs broker that is appropriately designated by the owner, purchaser, or consignee of the merchandise. 19 U.S.C. § 1484(a)(2)(B).

44. The Commercial Invoice must identify the seller and the buyer, and describe the particular goods being imported, including their quantity, country of origin, and price. 19 CFR § 141.86.

45. **<u>Customs Form 7501 Entry Summary and Certification</u>**. As discussed above, when an importer imports goods into the United States, the importer is required to complete a Customs Form 7501 Entry Summary. The Entry Summary is filed with U.S. Customs and Border Protection at the time of import and is used by Customs and Border Protection to collect all duty fees prior to liquidating/releasing the imported goods, including regular Harmonized Tariff Schedule Duty, Anti-Dumping Duty and Countervailing Duty owed for the importation.

46. In Box 33 of the Entry Summary, the importer is required to identify any Countervailing Duty rate assigned by the Department of Commerce to the imported goods. In Box 34, the importer is required to state the total duty and tax owed for the imported goods, including any Countervailing Duty fees.

47. At the bottom of the first page of the Entry Summary, the importer is required to sign a certification that states, in pertinent part:

> I declare that I am the Importer of record and that the actual owner, purchaser, or consignee for CBP purposes is as shown above, **OR** owner or purchaser or agent thereof.
>
> I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed.
>
> I will immediately furnish to the appropriate CBP officer any information showing a different statement of facts.

48. However, for each of the defendants' four hundred and fourteen importations of the Series 1 extruded aluminum imported between July 2011 and June 2014, each respective defendant importer falsified the Customs Form 7501 Entry Summary by failing to disclose the countervailing duty fees owed for these imports, and by falsely certifying that it had fully disclosed any countervailing duty fees owed for the imports and that the duty fees entered by the importer on

the Customs Form 7501 Entry Summary were true and correct.

49. **Pencheng's violations of the False Claims Act**. In the next few years following the May 26, 2011 Countervailing Duty Order (specifically, July 2011 through June 2014), defendant Pengcheng purchased and imported into the ports of Los Angeles, CA, Long Beach, CA, and New York, NY, approximately $857,000,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Pengcheng knowingly used a false record for each of these imports, in the form of Customs Form 7501, which Pengcheng improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required countervailing duty fees, and falsely certified that it had fully disclosed any countervailing duty fees owed for the imports and that the duty fees the importer entered on the Customs Form 7501 Entry Summary were true and correct. Pengcheng knowingly and improperly avoided its obligation to pay these countervailing duties on these imports and has continued to knowingly and improperly avoid its obligation to pay these countervailing duties on these imports.

50. Pengcheng carried out this scheme with 390 separate and false Customs Entry Summary Forms 7501.

51. **Transport Aluminum's violations of the False Claims Act**. In the next few years following the May 26, 2011 Countervailing Duty Order (specifically, July 2012 through February 2013), defendant Transport Aluminum purchased and imported into the ports of Los Angeles, CA, and Long Beach, CA, approximately $93,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Transport Aluminum knowingly used a false record for each of these imports, in the form of Customs Form 7501, which Transport Aluminum improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required countervailing duty fees, and falsely certified that it had fully disclosed any countervailing duty fees owed for the imports and that the duty fees the importer entered on the Customs Form 7501 Entry Summary were true and correct. Transport Aluminum knowingly and improperly avoided its

obligation to pay these countervailing duties on these imports and has continued to knowingly and improperly avoid its obligation to pay these countervailing duties on these imports.

52. Transport Aluminum carried out this scheme with 3 separate and false Customs Entry Summary Forms 7501.

53. **Aluminum Shapes' violations of the False Claims Act**. In the next few years following the May 26, 2011 Countervailing Duty Order (specifically, March 2013 through January 2014), defendant Aluminum Shapes purchased and imported into the ports of New York approximately $26,000,000 of extruded aluminum from Zhongwang in the PRC, for which it owed a countervailing duty of 374.15 percent on the value of the aluminum. Aluminum Shapes knowingly used a false record for each of these imports, in the form of Customs Form 7501, which Aluminum Shapes improperly made to appear that the countervailing duty was not owed, in order to avoid paying the required countervailing duty fees, and falsely certified that it had fully disclosed any countervailing duty fees owed for the imports and that the duty fees the importer entered on the Customs Form 7501 Entry Summary were true and correct. Aluminum Shapes knowingly and improperly avoided its obligation to pay these countervailing duties on these imports and has continued to knowingly and improperly avoid its obligation to pay these countervailing duties on these imports.

54. Aluminum Shapes carried out this scheme with 21 separate and false Customs Entry Summary Forms 7501.

55. **In reality, the aluminum pallets are not aluminum pallets at all**. These imports are solid aluminum extrusions shaped and tack welded together to look like a pallet. In reality, these pallets are made with Series 1000 nonstructural aluminum extrusions to be eventually used as basic feed stock to make aluminum billet. To do so, this 1000 series alloy (which is not less than 99% pure aluminum) feed stock is to be later melted and combined with magnesium, silicon, copper, zinc or other elements, to produce 6000 series aluminum billet which is usable in producing structurally sound aluminum extrusions and possibly other end products.

56. The "pallets" themselves would not survive any real usage as a pallet

due to the lack of proper welding during assembly as well as being too soft because they are almost pure aluminum and lacking a structural 6061 or 6905 alloy.

57. Real pallets made of the 6061 or 6905 alloys would not be able to be converted into the most common alloy for extrusions; 6063 alloy. By using a 1000 series alloy, Zhongwang's imported pallet feedstock can be converted into almost any alloy one would want to make. Hence, these are faux pallets whose destiny is a remelt furnace only.

58. The defendants are stockpiling this aluminum in at least three locations: their 1.1 million square foot warehouse in Fontana, California, their warehouse located at 19605 E. Walnut Drive North, Walnut, California, and also at the Aluminum Shapes facility in Delair, New Jersey. However much of the faux "pallets" in California have been trucked to the Aluminum Shapes facility in Delair, NJ, where they are being used as standard feed stock melted down to be alloyed into usable aluminum billet.

## VIII. CLAIM FOR VIOLATION OF THE FALSE CLAIMS ACT

59. Plaintiff repeats and realleges §§ 1 through 59 as if fully set forth herein.

60. In violation of 31 U.S.C. § 3729 (a)(1)C) and (G), and as described above, the defendants conspired and knowingly made or used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government, as described above.

61. The above described conduct of the defendants has caused damage to the United States of more than $3 Billion.

WHEREFORE, FOR THE United States and himself, *Qui Tam* Plaintiff Mike Rapport demands and prays that judgment be entered against the defendants and in *Qui Tam* Plaintiff's favor and in favor of the United States as follows:

1. For the amount of the United States' damages, trebled as required by

law, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

2. For the maximum *qui tam* share of the amount recovered for the United States permitted pursuant to 31 U.S.C. § 3730(d).

3. For attorney's fees together with all reasonable costs and expenses in prosecuting this matter and pursuant to 31 U.S.C. §§ 3730(d).

4. For all such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury.

Dated: April 14, 2015

Respectfully submitted,

Donald R. Warren (Bar No. 138933)
Phillip E. Benson (Bar No. 97420)
Warren - Benson Law Group
7825 Fay Avenue, Suite 200
La Jolla, CA 92037
Telephone: (858) 454-2877
Facsimile: (858) 454-5878

Attorneys for *Qui Tam* Plaintiff
Mike Rapport